# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**LEON VALENTINO COLEMAN, #142238**  **PLAINTIFF**

**VERSUS**  **CIVIL ACTION NO. 1:12cv123-JMR**

**MIKE BYRD, SHERIFF OF JACKSON**
**COUNTY; KEN BROADUS, and**
**JACKSON COUNTY, MISSISSIPPI**  **DEFENDANTS**

## MEMORANDUM OPINION

This matter is before the Court pursuant to Defendants' Motion for Summary Judgment [53] filed in this case. Also pending before the Court are Leon Valentino Coleman's [Coleman] Motions for Partial Summary Judgment [61, 72]; to Request Presence of Witnesses [80] and an associated motion from the Defendants to Strike Exhibits [90] attached to Coleman's motion to Request Witnesses. The Court, being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds as follows.

## STATEMENT OF THE CASE

The Plaintiff, Coleman, filed this *pro se* Complaint on April 19, 2012, alleging violations of his civil rights, pursuant to 42 U.S.C. § 1983, while lawfully incarcerated in the Jackson County Adult Detention Center [JCADC] during January 2011. Specifically, Plaintiff alleges a violation of his rights under the Eighth Amendment's Cruel and Unusual Punishment Clause, and deliberate indifference to a serious medical need. [14, p. 2.]

Coleman was booked into the JCADC in December 2010, for a probation violation, and was released on January 20, 2011. [53-2, 53-3.] He was subsequently booked in JCADC on February 22, 2012, on charges of grand larceny. [53-4.] Coleman was released from the JCADC

into the custody of the Mississippi Department of Corrections on April 17, 2012. [53-5, p. 2.]

On January 7, 2011, Coleman was housed in cell block O-E of the JCADC when Byrd and Broadus determined that a shakedown of the O-E cell block was necessary to check for weapons and other contraband. [53-6.] The Defendants assert that the shakedown was required because of gang related violent behavior. (*Id*.) The Emergency Services Unit [ESU] utilized a "flash bang", a pyrotechnic distraction device. (*Id*.) He claims that because Byrd and Broadus "initiated and supervised the shake down" both of these defendants are liable. [73, p. 5.]

Coleman contends that his ear drum was damaged and that he suffered with ear problems for three days after the incident. [Doc. 60, p.1 SEALED.] He contends that he suffered a shoulder injury and requested that the shoulder be x-rayed. (*Id*.) According to a document submitted by Singing River Hospital, Coleman's shoulder was x-rayed on January 12, 2011. [60, p. 2 SEALED.] No fractures were found at that time. (*Id*.) After the pain continued and repeated trips to the emergency room, Coleman had shoulder surgery in December 2011. [1, pp. 4-5.]

Coleman alleges that his constitutional rights under the Eighth Amendment were violated by Jackson County when a flash bang grenade was used in the cell block while he was at the JCADC. [14, p. 2.] He claims he was not taken for medical treatment after the incident although he alleges that he asked several times for treatment. (*Id*., pp. 3-4.) When he was released from the JCADC, he went to Singing River Hospital Emergency Room where he underwent treatment for the pain in his shoulder. (*Id*., p. 4.) Coleman stated that he lost income because he was unable to use his "dominate arm." (*Id*.) Coleman is seeking as relief to have the defendants pay his lost wages, payment of his hospital bills to Singing River Hospital, Dr. Dennis Harrison and Vocational Rehabilitation, and seeks "caution when using inmates as a training aid." [1, p. 4.]

The Defendants assert that Coleman's claims against Byrd and Broadus are in their official capacities only. [54, p. 5.] The defendants maintain that Coleman cannot prove that the shakedown was carried out in a malicious and sadistic manner rather than to restore or maintain discipline. (*Id*., p. 6.) Coleman cannot show that his shoulder injury was a direct result of the use of the flash bang device or that the use of such a device constituted excessive force. (*Id*.)

Coleman has not shown that there was a custom, policy or practice in place which resulted in the alleged violation of Coleman's constitutional rights. [54, p. 9.] In addition, the Defendants maintain that Coleman was not refused medical treatment. [54, p. 10.] The Defendants argue that Coleman requested an x-ray of his shoulder on January 10, 2011, and was taken to Singing River Hospital for x-ray of shoulder on January 12, 2011. [60, pp. 1-2 SEALED.] No other record of Coleman requesting medical treatment is available from JCADC, according to the defendants. [54, p. 10.] The Defendants state that acts of negligence, neglect or failing to provide medical treatment do not rise to the level of a constitutional violation. (*Id*.) Finally, the Defendants argue that if they are sued in their individual capacities that they are entitled to qualified immunity. [54, p. 12.]

The Defendants also assert that Coleman has not alleged that Byrd or Broadus failed to provide him medical treatment and that these defendants cannot be held liable under the doctrine of *respondeat superior*. [54, p. 11.] The defendants maintain that Coleman has not shown a violation of constitutional rights, or any evidence of unreasonable behavior on the part of Byrd or Broadus, making them entitled to qualified immunity. (*Id*.) Coleman's constitutional rights flow from the Eighth Amendment. In addition, the defendants argue that any request for injunctive relief is moot because Coleman is no longer housed in the JCADC. [54, p. 6.]

3

Finally, the defendants assert that the are exempt from liability under state law. [54, p. 13.] Under Miss. Code Ann. § 11-46-9(1)(m), individuals acting in the course and scope of their employment while the plaintiff was an inmate at a detention center, jail, workhouse, penal farm, penitentiary or other such institution are protected by statutory immunity from suit. [54, p. 14.]

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-7 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, it is well settled in this circuit that bare allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes. *Stafford v. True Temper Sports*, 123 F.3d 291, 295-6 (5th Cir. 1997).

In considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the party resisting the motion. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012). To survive summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See*

*Anderson*, 477 U.S. at 247-8; *Whitt v. Stephens County*, 529 F.3d 278, 283 n.8 (5th Cir. 2008).

## ANALYSIS

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981), *cert. denied* 455 U.S. 1027 (1982). 42 U.S.C. § 1983 neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Liability under section 1983 against a governmental agency requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject supervisors liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

An official policy is necessary as a predicate to recovery under a theory of municipal liability:

> Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Kohler v. Englade,* 470 F.3d 1104, 1115 (5th Cir. 2006).

Not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F. Supp. 2d 366, 376 (S.D. Miss. 1999); *see Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating that these two requirements "must not be diluted").

I. Excessive Force and Inadequate Training

A. Inadequate Training Claim

A municipality's failure to properly train or supervise its employees can be a policy or custom giving rise to § 1983 liability. *World Wide Street Preachers Fellowship v. Town of*

*Columbia*, 591 F.3d 747, 756 (5th Cir. 2009); *see City of Canton, Ohio v. Harris,* 489 U.S. 387, 387 (1988). Coleman must prove that: (1) the training procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the constitutional deprivation. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010), *cert. denied* \_\_\_U.S.\_\_\_, 131 S.Ct. 3059 (2011). For liability to attach based on an "inadequate training" claim, Coleman must specifically allege how a particular training program is defective or inadequate. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005).

Coleman has not provided any evidence of a policy of inadequate training, use of flash grenades, denial of medical treatment or supervisory practices followed or implemented by the Defendants at the JCADC. (Ct. R.) He merely asserts that because the flash bomb was detonated in the day room, his eardrum burst and his shoulder was injured, and the hiring, training, and supervising of jail employees must have been deficient and deliberately indifferent to his constitutional protections. For a claim to survive summary judgment, specific facts concerning the adequacy of the training program must be presented, mere inferences are not enough. Further, there is no pattern of past incidents involving the misuse of flash-bang devices necessary to support a finding of deliberate indifference on behalf of the Defendants. These elements must be proven with specific, concrete facts, for a supervisor cannot be held liable under a theory of *respondeat superior* for any negligent acts of his employees in a § 1983 claim. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992), *cert. denied* 506 U.S. 973. Accordingly, the Court finds that the Defendants are entitled to summary judgment on any claim of inadequate training.

7

B. <u>Excessive Force</u>

To prevail on an Eighth Amendment excessive force claim, Coleman must prove not only that the assault actually occurred but also that it was carried out "maliciously and sadistically" rather than as part of "a good-faith effort to maintain or restore discipline." *Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1180 (2010). "The amount of force that is constitutionally permissible . . . must be judged by the context in which that force is deployed." *Ikerd v. Blair,* 101 F.3d 430, 434 (5th Cir. 1996).

Several factors are relevant in the inquiry whether unnecessary and wanton infliction of pain was used in violation of a prisoner's eighth amendment right to be free from cruel and unusual punishment. These include the following factors:

> 1. the extent of the injury suffered;
> 2. the need for the application of force;
> 3. the relationship between the need and the amount of force used;
> 4. the threat reasonably perceived by the responsible officials; and
> 5. any efforts made to temper the severity of a forceful response.

*Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

The finder of fact must keep in mind that prison officials "may have had to act quickly and decisively." *Valencia v. Wiggins,* 981 F.2d 1440, 1446 (5th Cir. 1993), *cert denied* 509 U.S. 905. To determine whether the force used to effect a particular seizure is reasonable, we balance the nature and quality of the intrusion on the individual's rights against the "countervailing governmental interests at stake." *See Graham*, 490 U.S. at 395. "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the *core judicial inquiry* is . . . whether force was applied in a *good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.*" *Hudson v.*

*McMillian,* 503 U.S. 1, 7 (1992) (emphasis added).

In this case, Broadus submitted an incident report in which he states that he spoke with Byrd regarding concerns about gang related violent behavior and the need to search for weapons in the O-E dayroom. [53-6, 53-7.] Captain Craig Douglas [Douglas], with the ESU, was contacted to search the area. (*Id.*) Broadus indicates the following occurred:

> The standard procedure was followed. The main door was opened, a flash bang grenade utilized, and the entry team performed a dynamic entry and secured the dayroom without incident.

(*Id.*)

Broadus also submitted an affidavit in which he states that the shakedown resulted in the seizure of several razor blades and that the grenade was used to make entry into the cell block a surprise, and to keep the officers and inmates safe. [53-7.] In a report prepared by Douglas, he stated that Byrd and Broadus ordered that he assist in a "correctional tactical operation" at the JCADC. [53-8.] Broadus said that the dayroom in the O-E unit was becoming increasingly violent toward staff and other inmates who did not share a common gang affiliation with several of the inmates housed in that unit. [53-7.] Broadus also indicated that the O-E dayroom was full of "increasingly violent offenders." (*Id.*) Broadus wanted both dayrooms searched for contraband and weapons, and the ESU was needed to help due to the numbers of inmates involved and the need for tactical expertise. (*Id.*)

Douglas stated that after assessing the situation in the O-E unit, he decided to use a pyrotechnic distraction device because of the overwhelming odds against the ESU staff. [53-8, p. 1.] Douglas states he threw the device into an open area on the floor of the dayroom, and that the ESU entered the area and cleared each cell of inmates. (*Id.*, p. 2.) The use of the device allowed

9

the officers to enter the unit with no resistance from the inmates. (*Id.*)

A good faith effort to maintain or restore discipline in a prison setting which was assessed as a highly volatile and potentially dangerous situation, and the use of the device was not intended to maliciously and sadistically cause harm. The evidence before the court reflects that Douglas reasonably perceived a serious threat from the inmates given the size of the groups, their demeanor, and the fact that they were armed with makeshift weapons. The wide-ranging deference afforded to prison officials in adopting and executing policies and procedures necessary to preserve internal order and discipline "extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Whitley v. Albers,* 475 U.S. 312, 321–2 (1986).

Other than Plaintiff's allegations, there is no evidence that the Defendants maliciously and sadistically fired the grenade to cause Coleman harm. There is no evidence that Defendants intended to single out any particular inmate at all; rather, the device was shot at the center of the group of inmates. The Court concludes that a reasonable person in Douglas' situation would have believed that his conduct conformed to the constitutional standard set forth above. *See Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).

Whether Byrd or Broadus may be held liable under § 1983 depends on whether these Defendants (1) affirmatively participated in acts that caused the constitutional deprivation, or (2) implemented unconstitutional policies that causally resulted in Coleman's injury. *See Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 403 (1997); *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 435 (5th Cir. 2008). Douglas stated that he determined that the

use of the grenade was appropriate under the circumstances, and Coleman presents no evidence to refute this information or to establish that either Byrd or Broadus participated in the entry of the dayroom or enacted policies which would result in constitutional deprivations. Accordingly, the Court finds that the Defendants' motion for summary judgment on Coleman's excessive force claim should be granted. *See Black v. Warren,* 134 F.3d 732, 733–4 (5th Cir. 1998).

II.  Deliberate Indifference to Serious Medical Need

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.' " *Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *see also Reeves v. Collins,* 27 F.3d 174, 176-7 (5th Cir. 1994). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Easter v. Powell,* 467 F.3d 459, 463 (5th Cir. 2006). Unsuccessful medical or negligent medical treatment and medical malpractice, if any, do not constitute deliberate indifference, nor does a prisoner's disagreement with their medical treatment, absent exceptional circumstances. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Rather, a prison inmate can demonstrate an Eighth Amendment violation by showing that "prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Sama v. Hannigan,* 669 F.3d 585, 590 (5th Cir. 2012).

Coleman contends that he was taken to the hospital four days after the incident for an x-ray which revealed no broken bones. [14, p. 3.] He asserts that he received no further medical

treatment after the incident. (*Id.*, p. 4.) According to the defendants, Coleman was taken to Singing River Hospital after Coleman submitted a request for an x-ray after the incident. [10, 11.] The report showed the shoulder was normal. [11.] No other records of a request for further medical treatment were received by the defendants. [54, p. 10.] Coleman asserts that he was released from jail on January 21, 2011, and returned to the hospital following his release. [14, p. 4.] He later required surgery on the shoulder. (*Id.*)

The facts before the Court establish that Coleman was taken for an x-ray soon after his request for such treatment, and no broken bones were discovered at the time of the examination. Although Coleman was released before he sought other treatment, this is not sufficient to establish a viable section 1983 claim against these Defendants. Coleman must produce evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wonton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001). The evidence does not show that his complaints were ignored or disregarded. The Court concludes that the Defendants' motion for summary judgment on Coleman's claim of deliberate indifference to a serious medical need brought pursuant to section 1983.

III.    State Law Claims

The Defendants, in their official capacity, argue that MISS. CODE ANN. § 11-46-9 (1972) bars any recovery Coleman may seek under Mississippi law. Under that act, a governmental entity is not liable to any claimant who, at the time the claim arises, is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution regardless of whether the claimant is or is not an inmate when the actual claim is filed. The Court agrees with the

Defendants and finds that any claims Coleman raises under Mississippi State law against the Defendants in their official capacity are barred by provisions of the Mississippi Tort Claims Act.

IV.     Qualified Immunity

Based on the foregoing analysis, the Court finds that Coleman's Complaint fails to establish that a policy or custom on the part of the JCADC was the moving force behind any alleged constitutional violations. Furthermore, this Court finds that Coleman's allegations do not indicate that he faced a substantial risk of serious harm to which Defendants responded with deliberate indifference. Thus, there exists no basis for Coleman's claims against the Defendants in their official capacities.

The Court will liberally construe Coleman's Complaint as asserting claims against Defendants in their individual capacities. However, because Defendants are law enforcement officials, they are entitled to the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986), *cert denied* 483 U.S. 1021 (1987). In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). If a violation of a right has been alleged, then it must be determined whether the defendant's conduct was objectively reasonable. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998).

As discussed above, the Court finds that Coleman has not alleged sufficient facts to create a genuine issue as to whether he was subjected to excessive force at the hands of HCADC employees. The Court must determine whether Defendants' conduct was objectively reasonable

in light of clearly established law at that time. *Salas v. Carpenter*, 980 F.2d 299, 305-6 (5th Cir. 1992). Objective reasonableness analysis focuses on whether a reasonable person would have believed his conduct was constitutional in light of the information available to him and the clearly established law. *See Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). Under this standard, even officials who reasonably but mistakenly violate the Constitution are entitled to immunity. *Id.*

Accordingly, the Court finds that the Defendants acted with objective reasonableness under the circumstances the officers faced at the JCADC on the date in question. The Court, therefore, concludes that Byrd and Broadus are entitled to qualified immunity in this case and that the Defendants' motion for summary judgment on any claims advanced against them in their individual capacities should be granted.

The Court further finds that granting the Defendants' motion for summary judgment renders Coleman's Motions for Partial Summary Judgment [61, 72]; to Request Presence of Witnesses [80] and an associated motion from the Defendants to Strike Exhibits [81] attached to Coleman's motion to Request Witnesses moot, and finds that these motions should be denied.

**CONCLUSION**

Pursuant to the foregoing analysis, this Court finds that the Plaintiff has not presented any facts that create a genuine issue of material fact with regard to the Defendants' official or individual liability for a violation of the Plaintiff's constitutional or state law rights. Accordingly, the Court finds that the Defendants' Motion [53] for Summary Judgment should be granted as to all of the Plaintiff's claims and that all claims against all Defendants whether advanced in their individual or official capacities, should be dismissed with prejudice. In

14

addition, the Court finds that Coleman's Motions for Partial Summary Judgment [61, 72]; to Request Presence of Witnesses [80] and an associated motion from the Defendants to Strike Exhibits [90] attached to Coleman's motion to Request Witnesses should be denied. A separate Order in conformity with and incorporating by reference the foregoing Memorandum Opinion shall issue.  Each party shall bear their respective costs associated with this motion.

DATED, this the 5th day of March, 2013.

*s/ John M. Roper, Sr.*
CHIEF UNITED STATES MAGISTRATE JUDGE
